Good morning, ladies and gentlemen. Our first case for this morning will be Lampkins v. Calumet City. Mr. Redmond. May it please the court, my name is Larry Redmond and I represent the appellant, LaJuanda Lampkins, as the administratrix of the estate of Prince Akbar, deceased. Now was she ever appointed by a court to be administratrix? Not to my knowledge, Judge. So how, and somebody else is now the administrator of the estate or the, I need to find out who really is representing. That I don't know, Judge. My understanding is that it is LaJuanda Lampkins or her son, her other son. And I don't have his name. But if she was never appointed in any way to be the representative, how can she bring this suit? I mean, we have a letter indicating that Mr. Akbar has been appointed the administrator. This is dated February 28, 2013. But I'm curious whether there was a previous court appointed administrator. That I don't know, Judge. I did not initiate this lawsuit. I came in very late in the proceedings. As a matter of fact, I came in after the defendants had filed a motion for summary judgment. And so I reviewed the file from that point. And I did not go into, I did not look into whether or not the plaintiff actually had standing to bring this cause of action. It seems like a rather important point. It seems like a small, you know, a big issue. Yes. But I did not look into it. And I apologize for that. There's a reference to someone called Sir Gerald Smith. I believe that is her other son. I think that's the son. But the district court didn't use him as an, didn't identify him as an administrator. Not while I was before that court, no. Well, it's not in the order of the district court. It says Lampkins rather than Sir Gerald in the judgments caption as well. And that is what I went by. You know, it would be helpful to the court, I think, if within perhaps 14 days of this argument, you could file with us just a statement that traces exactly who's been representing this estate over what time and who is presently the administrator. And certainly, if the city has anything to say about this, you're welcome to file something at the same time. But it seems that this is a pretty straightforward question of what's going on. And with that, you can proceed to the rest of your argument. Thank you, Judge. The district court erred when it considered the Apollon's motion for summary judgment without without also considering the Apollon's motion for summary judgment. In fact, the Apollon's motion for summary judgment was never even fully briefed. And therefore, Apollon respectfully requests that this court remand this case to the district court in order to give the Apollon the opportunity to fully present the issues for review for three reasons. First, the Seventh Circuit Court of Appeals has an interest in seeing that the district courts apply the law evenly. Second, there are material facts in dispute in this matter. They could preclude the granting of a motion for summary judgment to either party. Please don't read your argument. What are those facts, really? Because in the end, of course, our review of any summary judgment decision, once there's a final judgment, as I believe there is here, is de novo. So the district court judge looks at all of these facts, even taking them in the light most favorable to the opponent of the motion, and says there's just no way that this could be seen as a violation. That is part of what our primary issue is. Because the Apollon never had the opportunity to fully brief her motion for summary judgment, the facts that are favorable to our side, if I can use that term, never came to light. Why didn't she have an opportunity? Because the district court did not set a briefing schedule for the Apollon's motion for summary judgment. But you still have a schedule to oppose the other party's motion for summary judgment. And I did that. Well, that's what we're talking about here. It's not your motion for summary judgment. The question here isn't whether you win on summary judgment. The question is whether you opposed the other party's summary judgment. I did oppose the other party's motion for summary judgment. So you did have an opportunity to present whatever you had against their motion. That is correct. But I think that because we didn't get a chance to fully brief our motion, the judge did not have an opportunity to view both motions for summary judgment in the light most favorable to the opponent of that motion for summary judgment. Now, that issue you're arguing now is not one of the three issues you identified for review here before us. I'm sorry? You're not having the opportunity to get a briefing schedule on the cross motion for summary judgment. I did raise that issue. I did raise that issue. I believe in my reply brief. That's too late. In fact, let me. I can tell you exactly where it was. Okay. I raised the issue. In my response to their motion for summary judgment, I raised the issue that the. But what I'm saying is you didn't raise it here for us for purposes of review. I believe that I did, but if the court says I did not. I'm just saying I don't see it in the briefs. I could be overlooking it. That's why I was asking you where it is in your briefs on appeal, because I didn't see it. Why don't you, since you're in your rebuttal time, you can take a look and see if you can come up with an answer to Judge Williams' question in your rebuttal time. Okay. So the question is, did I raise the issue of the judge not. As an issue for review, did you raise the question whether you had an adequate opportunity to oppose the motion for summary judgment filed by Calumet City? Okay. Thank you, Judge. I'd like to reserve the balance of my time. Thank you. Yes, you may. Mr. McGrath. Good morning, Your Honors. May it please the Court, my name is Michael McGrath. On behalf of the defendants, Appalese City, Calumet City, Officer Danielle Redwick and Officer George Jones. We believe that George Zago was correct in granting our motion for summary judgment. Since you were going over a little procedural, the background of the case, Attorney Redmond did come in late into the case. There was discovery on this case for approximately two years. The case was initially filed by Standish Willis, who withdrew after six months. And Mark Smullins filed an appearance, and he withdrew after 16 months of discovery of over 2,000 documents, 10 depositions, a fully established record for which a briefing schedule was set. And we were given leave to file our motion for summary judgment. Why were there two years of discovery? I'm sorry, Judge? Why were there two years of discovery? That's how long the case was ongoing, Your Honor. The first attorney, Willis, was on the case for... That's not responsive. Why does discovery in a case like this require two years? It really doesn't. It could be done quicker. I think it was just because of the change of the attorneys on the case and delays, but I would submit that it could be done much quicker. And when we filed our motion for summary judgment, actually, Attorney Smullins filed his motion to withdraw. And in that motion, he stated he couldn't formulate a reasonable defense to any of our arguments, and that's why he withdrew. So, do you have anything to say about this idea that there was an insufficient opportunity to respond to your motion? My response would be that Judge Zagos set a briefing schedule. He allowed us to file our motion for summary judgment. Mr. Redman came in. He was aware of the schedule. He filed a response to our motion for summary judgment without any contradiction or... Was this another Rule 56.1 problem? I can't remember. Not on our end, Your Honor. Mr. Redman failed to file any 56.1 statement of facts or contest any of our statement of facts. So, clearly, our position is that the facts in this case are not in dispute. And when Judge Zagos set the schedule for the motion for summary judgment, was it just for your motion or was it motions for summary judgment and set the date? In other words, he invited motions for summary judgment on either side. I know it was for ours. I don't remember if it was for both. I really don't. But there was an end date for the plaintiff to file their response to our motion for summary judgment. They filed that, and contained within that was their motion for summary judgment, which they didn't leave to file because it had been late. We had then filed a motion to strike the motion for summary judgment because it wasn't within the time period. Judge Zagos took it under abeyance. But, again, there was no Rule 56 statement of facts presented by Mr. Redman on behalf of his client. So as far as our position, based upon the statement of facts that are uncontested and not in dispute, Judge Zagos properly ruled in favor of our motion for summary judgment. So I have another question, and this really gets into the merits. I take it there's a video of, I haven't looked at it, but of a good bit of what happens, and that Mr. Ackbar starts to become agitated when they pat him down. Is that correct? I mean, there's some indication it's when they try to handcuff him. Maybe some indication it's when they start to pat him down. Unfortunately, in many of these cases, what actually happens just happens to be outside the camera view. So we can't tell. It doesn't show that. It's Officer Jones' squad car surveillance, which is straightforward. They're out of view. You hear screaming and yelling, Officer Rednick asking for more backups, screaming, yelling. That's when the physical altercation took place, and you can hear the shots fired. That was filed with the district court. It was actually brought over to the district court by plaintiff or by the decedent's mother after the motion for summary judgment and the response filed by plaintiff had been filed. Okay. That's fine. I understand. I've seen those squad car cameras before. Okay. I truly believe that based upon the undisputed facts that Judge Dagle made the proper ruling in granting a motion for summary judgment onto all counts, the excessive force, which was supported by our expert witness, the conspiracy and the lack of training, and all of the state law claims, and I ask that that decision be affirmed. All right. Thank you very much. Thank you. Thank you. Anything further, Mr. Redman? If I may, in my reply brief to this court on page four, I just saw it in the notes. Oh, here we go. About halfway down. Instead, that court held the plaintiff-appellant's cross motion for in abeyance pending the determination of its merits on the defendant-appellee's motion for summary judgment. That's where I bring the issue up. He held ours in abeyance until he had determined the merits of the appellee's motion for summary judgment. Okay. So that's good. I see it in the reply, but you realize it needs to be in your opening brief for it to be considered. And it should have been raised with Judge Zagel as well. I'm not sure we had the opportunity to raise it with Judge Zagel because we filed the motion for summary judgment, and the defendants filed a motion to strike. He denied that motion to strike, and then he made his ruling on their motion for summary judgment. So we were not before him at any time after that. Now, your opponents say that your motion was late. It was filed quite a bit after looking at this same page of your reply brief you just mentioned. They filed their motion for summary judgment January 3, 2014. Yours doesn't come along until August 20, eight months and some later. So was it within the time provided by the district court's schedule? I don't think that it was, but I didn't come into this case until I think maybe June or July. No, I understand. And so once I reviewed the documents and once I reviewed their motion for summary judgment, then I determined that we should file our own motion for summary judgment, and I did that. There is one point that I'd like to raise. The appellees mentioned that the C.D. in question had yelling and screaming prior to the altercation. In fact, there was no yelling and screaming. Mr. Akbar, he did not, and it is on the sound portion of the C.D., not the video portion, because, correctly, it was pointing towards the outside of the view. But you can hear everything that's going on. And what you hear is rumbling and then the decedent saying, move, move, get off me. And it's in the depositions that he had his hands to his chest. They tased him. So what I don't understand, though, is here they have a person who they've gotten a phone call from the school or whatever, they've been called in because he's already been causing problems. And it's very difficult for me to imagine why police officers wouldn't be fully entitled, under a Terry kind of theory, to pat him down, possibly even restrain his hands. And your theory seems to be that they didn't have that right. But it seems to me very difficult to imagine how you could get there. Because if you look at the video from the school, he's not creating any problems in the school. They get calls from the school saying there were issues with him being in the school and that they were afraid, but there was nothing dangerous that he was doing. They didn't think so. They don't just call the police for fun. They are discouraged by his behavior. So they call. Actually, an employee from the school calls three times. He's screaming and yelling and frightening the staff. So I don't see why that doesn't permit the police officers to do an ordinary pat-down. And if that's what causes him to flip out, then the police haven't done anything wrong at that point. I understand and I appreciate the opportunity to address that. When Officer Jones pulls up, and you can see it on the small piece of the video, the situation is completely under control. Officer Red Wank and the decedent are standing there completely calm. They talk to him. He agrees to go back to the car. And out of the blue, they jump him and attempt to – he feels betrayed. Okay. Well, your time is up, so we will take the case under advisement. Thanks to both counsels.